**ORAL ARGUMENT NOT YET SCHEDULED**

No. 23-7010

**In the United States Court of Appeals
for the District of Columbia Circuit**

---

Conrad P. Smith; Danny L. McElroy; Byron Evans; Governor Latson; Melissa Marshall; Michael Fortune; Jason Deroche; Reginald Cleveland,
*Plaintiffs-Appellees*
v.
Donald J. Trump, solely in his personal capacity,
*Defendant-Appellant*
Donald J. Trump For President, Inc.; Stop the Steal L.L.C.; Ali Alexander, also known as Ali Abdul Razaq; Brandon J. Straka; Roger J. Stone; Proud Boys, an unincorporated association; Proud Boys International, L.L.C.; Enrique Tarrio; Ethan Nordean; Joseph R. Biggs; Charles Donohoe; Dominic J. Pezzola; Oath Keepers; Stewart Rhodes; Thomas E. Caldwell; Jessica Watkins; Kelly Meggs; Alan Hostetter; Russell Taylor; Erik Scott Warner; Felipe Antonio Martinez, Tony; Derek Kinnison; Ronald Mele; John Does, 1-10; Make America Great Again PAC,
*Defendants-Appellees*

**On Appeal from the United States District Court
for the District of Columbia, 1:21-cv-02265-APM**

---

**REPLY BRIEF OF DEFENDANT-APPELLANT
DONALD J. TRUMP, SOLELY IN HIS PERSONAL CAPACITY**

---

David A. Warrington
Jonathan M. Shaw
Dhillon Law Group, Inc.
2121 Eisenhower Avenue, Suite 402
Alexandria, Virginia 22314
(703) 574-1206
dwarrington@dhillonlaw.com
jshaw@dhllonlaw.com

Jesse R. Binnall
Molly McCann
Jason C. Greaves
Binnall Law Group
717 King Street, Suite 200
Alexandria, VA 22314
(703) 888-1943
jesse@binnall.com
molly@binnall.com
jason@binnall.com

*Counsel for Defendant-Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................... i

TABLE OF AUTHORITIES ............................................................................ ii

SUMMARY OF THE ARGUMENT ............................................................... 1

    I.    Appellees Are Attempting to Reformulate Presidential Immunity. ............................................................................................ 3

    II.   Appellees Mischaracterize the Issue of this Lawsuit; the Focus is Purely on President Trump's Speech. ....................... 6

CONCLUSION .................................................................................................. 9

STATEMENT ON ORAL ARGUMENT ...................................................... 11

CERTIFICATE OF COMPLIANCE ............................................................. 11

CERTIFICATE OF SERVICE ........................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Banneker Ventures, LLC v. Graham*,

    798 F.3d 1119, 1141 (D.C. Cir. 2015) .................................................. 5

*Brandenburg v. Ohio*,

    395 U.S. 444 (1969) ................................................................................ 9

*Clinton v. Jones*,

    520 U.S. 681 (1997) ................................................................................ 4

*NAACP v. Claiborne Hardware Co.*,

    458 U.S. 886, 928 (1982) ........................................................................ 9

*Nixon v. Fitzgerald*,

    457 U.S. 731 (1982) ............................................... 1, 2, 3, 4, 5, 8, 10

**Other Authorities**

*Blassingame, et al. v. Trump*,

    No. 22-5069, ECF No. 1988265 (D.C. Cir. Mar. 2, 2023) ............... 2, 3

## SUMMARY OF THE ARGUMENT

The Appellees' brief ignores the complexities of the President's duties, the unique nature of the office, and the Supreme Court's central reasoning in *Nixon v. Fitzgerald*, 457 U.S. 731 (1982), the controlling precedent for this appeal. The Appellees' argument rests on a fundamental reformulation of the test for presidential immunity and conclusory assertions that President Trump engaged in activity beyond protected speech.

The central theme of the Supreme Court when determining the scope of presidential immunity was the President's unique position in our constitutional framework. The Supreme Court stressed the necessity of broad presidential immunity to protect the president from distracting suits and even to protect him from the fear of suit so that—as envisioned by our Founders—the nation can benefit from a vigorous and bold Chief Executive. If this Court were to adopt the pedestrian form of immunity advocated by the Appellees, or even the compromise attempted by the district court, it would eviscerate presidential immunity and leave all

Presidents exposed to the animus of political opponents and the whims of inconsistent individual courts.

Furthermore, the Appellees have not pled any "non-speech" action on the part of President Trump, which is why both the district court and the Department of Justice, in its brief in *Blassingame*, agreed that the only action at issue in this case is President Trump's speech at the Ellipse on January 6th. *Blassingame, et al. v. Trump*, No. 22-5069, ECF No. 1988265 at 2 (D.C. Cir. Mar. 2, 2023). Accordingly, the sensible course is for this Court to await final resolution of *Blassingame*.

Regardless, this appeal is ultimately very simple. President Trump's contested speech was on a matter of critical public concern, a category of activity well within the outer perimeter of a President's official action. The Supreme Court in *Fitzgerald* made clear that when acting in his official capacity, a President of the United States is immune from civil suit. 457 U.S. at 754, 756. No probing of his motives is permitted. *Id.* at 756. The plaintiffs below are attempting to thwart that immunity; the court below sanctioned their actions. The decision of the district court should be reversed with direction to grant President

2

Trump's motion to dismiss based on controlling Supreme Court precedent.

## ARGUMENT

### I. Appellees Are Attempting to Reformulate Presidential Immunity.

The Appellees' flippant statement that President Trump's theory of immunity has "zero legal support" is sensational and false. Appellees' Br. at 2–3. As previously briefed, President Trump's formulation of the test is that adopted by the majority of the Supreme Court in *Nixon v. Fitzgerald*, and is therefore binding on this Court. 457 U.S. at 755—56. One has but to read the dissent to that opinion to determine as much. The Appellees are attempting to convince this Court to accept the strict functional immunity rejected by the Supreme Court in 1982, as even the DOJ in its supplemental brief in *Blassingame* noted. *Blassingame, et al. v. Trump*, No. 22-5069, ECF No. 1988265 at 9 (D.C. Cir. Mar. 2, 2023) ("DOJ's Br.").

The broad scope of presidential immunity articulated in *Fitzgerald* is unmistakable. The Appellees, therefore, argue that *Clinton* clarified *Fitzgerald*'s immunity test. Appellees' Br. at 20. But the Appellees'

3

interpretation of the "clarification" is, in fact, an argument that *Clinton* overturned *Fitzgerald*. The chief and very heated debate among the justices in *Fitzgerald* was the scope of presidential immunity. The majority flatly rejected the strict functional immunity repeatedly endorsed by the Appellees in their brief. *E.g.*, 457 U.S. at 756.

In *Clinton*, the High Court was examining claims that focused on actions the sitting president took *before he was elected to office*, thus the obvious inapplicability of *Fitzgerald* immunity. *Clinton v. Jones*, 520 U.S. 681 (1997). Although President Trump does not argue that *Clinton* can shed *no light* on presidential immunity, its applicability is limited because of the radically different factual scenario. The Appellees ignore this entire (and distinguishing) aspect of *Clinton*. Appellees' Br. at 21 ("In other words, the concerns present in *Fitzgerald* . . . were not implicated where the President was being sued for conduct that did not relate to his official responsibilities."). *Clinton* simply cannot bear the weight required by the Appellees to make their case.

The error in the Appellees' immunity argument is further illuminated by their repeated attempts to insist *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119 (D.C. 2015), is an appropriate authority to

4

utilize in determining the immunity of a President of the United States. Appellees fail to absorb the thrust of *Fitzgerald*: the importance of the President's unique position in our constitutional structure and the singular type of immunity that follows from that. Instead, Appellees blithely note that "[t]his Court has regularly applied [*Graham*'s] principles in a variety of contexts." Appellees' Br. at 21. *Graham*'s whole approach directing court's to carefully focus on "the relationship between the 'act complained of' and the corresponding 'matters committed by law to [the official's] control or supervision,'" *Graham*, 798 F.3d at 1141, is a form of strict functional immunity—just the type of analysis *Fitzgerald* expressly rejected. While it might be an appropriate approach to apply to officials at other levels of government, it cannot be applied to the Chief Executive, as *Fitzgerald* made clear. Appellees' point that *Graham*'s factors have been widely applied to immunity cases for other types of officials is not a point that strengthens the Appellees' argument, rather it underscores they do not understand the reasoning and conclusion of *Fitzgerald* or the magnitude of presidential immunity.

    This leads to the next fatal flaw in the Appellees' position.

## II. Appellees Mischaracterize the Issue of this Lawsuit; the Focus is Purely on President Trump's Speech.

The Appellees' briefs are cluttered with myriad details about the 2020 campaign, President Trump's tweets and stump speeches, and the political rhetoric that followed the contested election, up to and including his words and actions on January 6th. They are ignoring in this Court a point they lost below and have not cross-appealed—all their complaints center on speech. Appellees have not pled any *action* on President Trump's part that is not speech. Aggregating constitutional speech Appellees do not like does not transform that speech into unconstitutional speech, much less into concrete *action*. As the district court rightly determined, the issue in this case—once the irrelevant facts are properly pruned away—reveals only the speech at the Ellipse. The Appellees struggle mightily against this conclusion, because to accept it reveals the naked truth: only the speech is at issue, and that speech on a matter of public concern was fully within the outer perimeter of a President's ordinary activity.

It is true that President Trump "does not seriously engage Appellees' allegations that he attempted to disrupt Congress's discharge of its duties, which is the heart of the Amended Complaint." Appellees'

6

Br. at 28. At the motion to dismiss stage (the point at which President Trump appealed) attempting to dispute properly pled allegations is futile. But here, President Trump does not have to engage with the Appellees' supposed facts.

The Appellees' argument rests on conclusory allegations no court is bound to accept. They claim that this Court must focus on "the act complained of," which they allege is President Trump's "attempt to prevent Congress from discharging its duties concerning the certification of the 2020 Election results through the use of force, intimidation, and threats." Appellees' Br. at 17. But the Appellees have not pled any facts to connect the actions of force, intimidation, or threats with President Trump, beyond his constitutionally protected speech. Both the district court and the DOJ, neither of which wants President Trump to benefit from immunity in this case, agree that the action at issue here is speech.

In its court-requested amicus brief submitted in *Blassingame*, the DOJ took the position that the bully pulpit was absolutely and necessarily within the outer perimeter of the President's immunity. DOJ's Br. at 12. The DOJ even disagreed with the district court's careful parsing of presidential acts versus purely campaign activity, arguing that

7

the "president is both the Chief Executive and an elected politician; his policy decisions are also political acts with political consequences." DOJ's Br. at 14. You cannot separate the president from the politician—the presidency is a political office.

Under *Fitzgerald*, neither the President nor the court must identify a particular official responsibility for immunity to apply. *Fitzgerald*, 457 U.S. at 756 ("In many cases it would be difficult to determine which of the President's innumerable 'functions' encompassed a particular action….[A]n inquiry into the President's motives could not be avoided under the kind of 'functional' theory asserted by both respondent and the dissent. Inquiries of this kind could be highly intrusive."). Yet in this case, President Trump, the DOJ, and the district court all agreed there was a clear presidential activity in which President Trump was engaged: speech on matters of public concern. All three agree that such activity is within the outer perimeter of a President's immunity.

The obvious problem with the Appellees' suit and even the district court's attempt to defer to the separation of powers while denying President Trump immunity was highlighted by the DOJ when it warned that Presidents must be able to engage in "'emotionally charged rhetoric,'

8

'strong language' or 'spontaneous and emotional appeals." DOJ's Br. at 18 (citing *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 928 (1982)). For this particular President, however, the DOJ attempted to create an exception that would apply here without damaging the immunity of future presidents. As President Trump has explained, however—and Appellees have not meaningfully responded to his argument—application of such a test would require at a minimum that a President receive immunity unless it was clear under established law that his speech constitutes incitement under *Brandenburg* and its progeny. Otherwise, an absolutely immune President would receive less immunity than an inferior federal official entitled only to qualified immunity.

The Appellees cannot transform President Trump's speech into the type of action necessary to carry their case. The issue of this dispute centers on speech alone.

## CONCLUSION

Presidential immunity is deliberately robust to shield the President from even the fear of triggering harassing litigation. It is, indeed, a vast sphere of protection extending beyond a strict functional immunity. This, in turn, protects the will of the people and the democratic process from

being abused or thwarted. Courts and litigants are not permitted to probe the President's motives or parse his words to find "unofficial" elements. President Trump was speaking on a matter of public concern. Once a court has determined as much, *Fitzgerald* mandates absolute immunity and an end to the matter. The decision of the district court should be reversed, and this matter should be remanded with instructions that President Trump be dismissed as a defendant.

Dated: August 18, 2023                    Respectfully submitted,

                                                   */s/* Jesse R. Binnall
                                                 Jesse R. Binnall
                                                 Molly McCann
                                                 Jason C. Greaves
                                                 BINNALL LAW GROUP, PLLC
                                                 717 King Street, Suite 200
                                                 Alexandria, Virginia 22314
                                                 Phone: (703) 888-1943
                                                 Fax: (703) 888-1930
                                                 jesse@binnall.com
                                                 molly@binnall.com
                                                 jason@binnall.com

                                                 David A. Warrington
                                                 Jonathan M. Shaw
                                                 Dhillon Law Group, Inc.
                                                 2121 Eisenhower Avenue, Suite 608
                                                 Alexandria, Virginia 22314
                                                 Tel:  (703) 574-1206

>Fax: (415) 520-6593
>dwarrington@dhillonlaw.com
>jshaw@dhllonlaw.com
>
>*Attorneys for President Donald J. Trump*

## STATEMENT ON ORAL ARGUMENT

President Trump respectfully requests that the question of whether oral argument is needed in this case be deferred until after the *Blassingame* appeal is decided, when the Court and the parties can more readily determine the issues on which oral argument would be appropriate to assist the Court resolve this case.

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this Petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 5(c)(1) because, excluding the parts of the Petition exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1), it contains 1,874 words.

Undersigned counsel certifies that this Petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century font.

Dated: August 18, 2023                Respectfully submitted,

*/s/ Jesse R. Binnall*
Jesse R. Binnall

*Attorney for President Donald J. Trump*

## CERTIFICATE OF SERVICE

I certify that on August 18, 2023, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

*/s/ Jesse R. Binnall*
Jesse R. Binnall

*Attorney for President Donald J. Trump*